UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MILWAUKEE ELECTRIC TOOL CORPORATION,
METCO BATTERY TECHNOLOGIES, LLC,
AC (COMMERCIAL OFFSHORE DE MACAU)
LIMITADA, and TECHTRONIC INDUSTRIES CO.
LTD.,

      Plaintiffs,

v.                                      Case No. 09-C-948

HITACHI KOKI CO., LTD. and
HITACHI KOKI U.S.A., LTD.,

      Defendants.

**DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' INEQUITABLE CONDUCT AFFIRMATIVE DEFENSE AND DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM**

**I. PROCEDURAL BACKGROUND**

On October 1, 2009, Milwaukee Electric Tool Corporation, Metco Battery Technologies LLC, Techtronic Industries Co. Ltd., and AC Commercial Offshore De Macau Limitada (collectively "plaintiffs"), filed their complaint against Hitachi Koki Co. Ltd. and Hitachi Koki USA Ltd. (collectively "defendants") asserting five counts of patent infringement. (Compl. ¶ 1–47, ECF No. 1.) On November 19, 2009, the plaintiffs amended their complaint, but the substance of the complaint remained unchanged. (Am. Compl., ECF No. 8.)

On September 30, 2011, the plaintiffs filed a second amended complaint, which added U.S. Patent No. 7,944,173 ("the '173 patent") and U.S. Patent No. 7,999,510 ("the '510 patent"). (Pls.' Am. Compl. ¶¶ 24–29, ECF No. 65.) The defendants answered on October 20, 2011 and asserted that patents '173

and '510 are unenforceable due to inequitable conduct during prosecution of the patents. (Counterclaim ¶¶ 19–50, Eighth Affirmative Defense, ECF No. 69.) The plaintiffs filed a motion to strike the defendants' inequitable conduct affirmative defense and to dismiss the defendants' inequitable conduct counter claim on November 23, 2011, pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b). The motion has been fully briefed and is now ready for resolution.[1] For the reasons that follow, the court will grant the plaintiffs' motion to strike defendants' inequitable conduct affirmative defense and dismiss defendants' inequitable conduct counterclaim without prejudice and allow the defendants to amend their allegations.

## II. FACTUAL BACKGROUND

Although there are seven patents-in-suit, the patents relevant to the plaintiffs' motion are U.S. Patent No. 7,554,290 ("the '290 patent"), the '173 patent, and the '510 patent. The '290 patent was part of the initial complaint, but the '173 and '510 patents were added in September 2011, when the plaintiffs filed their second amended complaint. (Second Am. Compl. ¶¶ 26–29, ECF No. 65.) Each of the three patents describes a battery pack for powering a hand held power tool. ('290 patent, ECF No. 75-5; '173 patent, ECF No. 75-6; '510 patent, ECF No. 75-7.)

On November 19, 2010, in accordance with this court's scheduling order, the defendants served their disclosure of invalidity contentions ("Invalidity Contentions") on the plaintiffs. (Invalidity Contentions, ECF No. 75-1.) The Invalidity Contentions identified what the defendants believe to be 56 items of prior art that anticipate and/or render obvious claims 1, 6, and 8-10 of the '290 patent. (Invalidity Contentions 5–9, ECF No. 75-1.)

---

[1] In addition to the regular briefing of the plaintiffs' motion to dismiss and strike, the defendants filed a motion for leave to file a sur-reply in further opposition to the plaintiffs' motion (ECF No. 79). The court will grant that motion and allow the defendants' sur-reply to be filed.

On May 17, 2011, the PTO issued the '173 patent to Todd W. Johnson et al. (Second Am. Compl. ¶ 24, ECF No. 65.) Three of the plaintiffs are co-owners of the '173 patent by assignment and Milwaukee Battery Technologies, Inc., has a license to certain exclusive rights under the '173 patent. (Second Am. Compl. ¶ 25–26, ECF No. 65.)

On August 16, 2011, the PTO issued U.S. Patent No. 7,999,510 ("the '510 patent") to Todd W. Johnson et al. (Second Am. Compl. ¶ 27, ECF No. 65.) Again, three of the plaintiffs are co-owners of the '510 patent by assignment and Milwaukee Battery Technologies, Inc., has a license to certain exclusive rights under the '510 patent. (Second Am. Compl. ¶¶ 28–29, ECF No. 65.)

On September 30, 2011, the plaintiffs filed a second amended complaint to add the new patents to the lawsuit. (Second Am. Compl., ECF No. 65.) The defendants' answer to the second amended complaint sets forth a counterclaim for inequitable conduct during prosecution of the '173 and '510 patents and an affirmative defense that the '173 and '510 patents are unenforceable due to inequitable conduct. (Counterclaim ¶¶ 19–50, Eighth Affirmative Defense, ECF No. 69.) Specifically, the defendants claim that one or more individuals associated with filing or preparing the applications leading to the '173 and '510 patents were aware of information material to the patentability of the claims of the '173 and '510 patents, but withheld such information from the U.S. PTO with an intent to deceive the U.S. PTO . . . ." (Counterclaim ¶ 25, ECF No. 69.) The defendants claim that the plaintiffs, through prosecuting attorneys and representatives, failed to disclose (1) the defendants' Invalidity Contentions;[2] (2) forty-two prior art references; (3) a PTO Office Action dated September 15, 2010; and (4) U.S. Patent No. 6,228,529 ("the '529 patent") to the PTO during prosecution of the '173 and '510 patents.

---

[2] In their answer, the defendants cite forty-two prior art references that were also included in the defendants' Invalidity Contentions. For ease, the court will refer to both the defendants' Invalidity Contentions and the forty-two prior art references cited in the defendants' answer collectively as the Invalidity Contentions.

3

(Counterclaim ¶¶ 1–50, ECF No. 69.) Further, the defendants assert that the plaintiffs withheld this information with the intent to deceive the PTO. (Counterclaim ¶¶ 30, 36, 45, 49, ECF No. 69.)

Turning first to the defendants claim with regard to the Invalidity Contentions, the defendants assert the following:

> 20. Defendant Milwaukee Electric Tool Corp. filed U.S. Patent Application No. 12/331,088 on December 9, 2008 ("the '088 Application") . . . . The '088 Application issued on May 17, 2011 as the '173 Patent.
>
> 21. Defendant Milwaukee Electric Tool Corp. filed U.S. Patent Application No. 13/014,264 on January 26, 2011 ("the '264 Application") . . . . The '264 Application is a continuation of the '088 Application and issued on August 16, 2011 as the '510 Patent.
>
> 22. Carlo M. Cotrone, Esq. of the law firm of Michael Best & Friedrich LLP prosecuted the '173 and '510 patents on behalf of Milwaukee Electric Tool Corp. and signed substantive documents submitted to the [PTO] on behalf of Milwaukee Electric Tool Corp.
>
> 23. Upon information and belief, Elizabeth A. Egasti of Milwaukee Electric Tool Corp. was substantively involved in the prosecution of the '173 and '510 patents.
>
> 24. Upon information and belief, Dyann Kostello of Milwaukee Electric Tool Corp. was substantively involved in the prosecution of the '173 and '510 patents.
>
> 25. The claims of the '173 and '510 patents are unenforceable due to inequitable conduct in the procurement of those patents from the U.S. PTO. Upon information and belief, one or more individuals associated with the filing or preparation of the '088 and '264 Applications and/or persons substantively involved in the prosecution of the applications leading to the '173 and '510 patents, including, without limitation, Carlo M. Cotrone, Esq., Elizabeth A. Egasti, and Dyann Kostello were aware of information material to the patentability of the claims of the '173 and '510 patents, but withheld such information from the U.S. PTO with an intent to deceive the U.S. PTO in violation of the duty of disclosure set forth in 37 C.F.R. § 1.56.

(Counterclaim ¶¶ 20–25, ECF No. 69.)

The defendants then list the forty-two prior art references that were originally identified in the defendants' Invalidity Contentions served on the plaintiffs on November 19, 2010, but were not disclosed

4

to the PTO during the prosecution of the '173 and '510 patents. (Counterclaim ¶¶ 26, 28, ECF No. 69.) They assert that each of the references is material "because each of the prior art references . . . anticipates or renders obvious the claims of the '173 and '510 patents . . . ." (Counterclaim ¶ 27, ECF No. 69.)

The defendants further state that, "[u]pon information and belief, one or more persons, including, without limitation, Elizabeth A. Egasti and Dyann Kostello, were aware of the prior art references . . . and were also aware of the materiality of each prior art reference." (Counterclaim ¶ 29, ECF No. 69.) The paragraph also alleges that the individuals are believed to have been "substantively involved in the prosecution of the applications leading to the '173 and '510 patents and intentionally failed to disclose this material information at any time during the prosecution of the '173 and '510 patents with an intent to deceive the U.S. PTO." (Counterclaim ¶ 29, ECF No. 69.)

The defendants allege that the plaintiffs were aware of the prior art because the defendants served their Invalidity Contentions on the plaintiffs on November 19, 2010, which identified the prior art as it related to the '290 patent. (Counterclaim ¶ 26, ECF No. 69.) The defendants acknowledge that the Invalidity Contentions relate to a different patent, but argue that the "Invalidity Contentions were material to the patentability of the '173 and '510 patents and non-cumulative of the references cited during the prosecution of the '173 and '510 patents because the same basis and reasons articulated in Defendants' Invalidity Contentions as to anticipation and/or obviousness of claims 1, 6, and 8-10 of the '290 patent also apply to the claims of the '173 and '510 patents." (Counterclaim ¶ 33, ECF No. 69.)

The defendants also claim that the plaintiffs withheld an Office Action issued by the PTO on September 15, 2010 "in connection with U.S. Patent Application No. 12/766,965 ("the '965 application") and U.S. Patent No. 6,228,529 ("the '529 patent")." (Counterclaim ¶ 37, ECF No. 69). They describe the importance of the September 15, 2010 Office Action and the '529 patent as follows:

5

38. The '965 application is entitled "Battery Pack" and was filed by Defendant Milwaukee Electric Tool Corp. on April 23, 2010. Carlo M. Cotrone, Esq. of the law firm of Michael Best & Friedrich LLP prosecuted the '965 application on behalf of Milwaukee Electric Tool Corp. and signed substantive documents submitted to the U.S. PTO on behalf of Milwaukee Electric Tool Corp., including the Response to the September 15, 2010 Office Action.

39. In the September 15, 2010 Office Action, the Examiner rejected then-pending claims 1-13 of the '965 application under 35 U.S.C. § 103 as being unpatentable over U.S. Patent No. 6,329,788 ("the '788 patent") in view of the '529 patent. Among other things, the Examiner cited to portions of the '788 patent and the '529 patent that disclosed each and every element of then-pending claims 1-13 of the '965 application and provided an explanation as to why it would have been obvious to a person of ordinary skill in the art to combine the teachings of the '788 patent and the '529 patent.

40. Claim 1-13 of the '965 application are substantially the same as many of the claims of the '173 and '510 patents and include many of the same limitations.

41. In response to the September 15, 2010 Office Action, Applicants cancelled claims 1-13.

42. The September 15, 2010 Office Action was material to the patentability of the '173 and '510 patents because the same basis and reasons articulated by the Examiner in rejecting then-pending claims 1-13 of the '965 application also render the claims of the '173 and '510 patents unpatentable.

43. The Examiner for the '965 application was different from the Examiner for the '173 and '510 patents.

44. Upon information and belief, one or more persons, including, without limitation, Carlo M. Cotrone, Esq., were aware of the September 15, 2010 Office Action and of the materiality of the September 15, 2010 Office Action. Upon information and belief, such persons were substantively involved in the prosecution of the applications leading to the '173 and '510 patents and intentionally failed to disclose this material information at any time during the prosecution of the '173 and '510 patents with an intent to deceive the U.S. PTO.

45. Upon information and belief, the conduct of failing to disclose the September 15, 2010 Office Action was done with an intent to deceive the U.S. PTO and constitutes inequitable conduct, rendering the '173 and '510 patents unenforceable.

46. The '529 patent is material to the . . . patentability of the '173 and '510

6

patents and is non-cumulative of the references cited during the prosecution of the '173 and '510 patents because it renders the claims of the '173 and '510 patent obvious under 35 U.S.C. § 103 in combination with the '788 patent for the reasons stated in Defendants' Invalidity Contentions, including Appendix A attached thereto, and for the reasons stated by the Examiner in the September 15, 2010 Office Action in rejecting then-pending claims 1-13 of the '965 application under 35 U.S.C. § 103 as being unpatentable over the '788 in view of the '529 patent.

     47.     The '529 patent was not disclosed to the U.S. PTO during prosecution of the '173 and '510 patents.

     48.     Upon information and belief, one or more persons, including, without limitation, Carlo M. Cotrone, Esq., Elizabeth A. Egasti, and Dyann Kostello, were aware of the '529 patent and of the materiality of the '529 patent due to their knowledge of the September 15, 2010 Office Action and/or Defendants' Invalidity Contentions. Upon information and belief, such persons were substantively involved in the prosecution of the applications leading to the '173 and '510 patents and intentionally failed to disclose this material information at any time during the prosecution of the '173 and '510 patents with an intent to deceive the U.S. PTO.

(Counterclaim ¶¶ 38–48, ECF No. 69.)

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense . . . ." "The standard for deciding a motion to strike an affirmative defense as 'insufficient' is the same as for a motion to dismiss a complaint for failure to state a claim." *U.S. S.E.C. v. Sachdeva*, No. 10-C-747, 2011 WL 933967, at *1 (E.D. Wis. Mar. 16, 2011) (citing *Renalds v. S.R.G. Rest. Grp*, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)). An affirmative defense is therefore sufficient if "it contains sufficient factual matter, accepted as true, to state an affirmative defense to relief that is plausible on its face." *Sachdeva*, at *1.

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the court to decide whether the pleadings state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 884 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to the probability standard. *Id.* A pleading must contain enough "[f]actual allegations . . . to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In other words, the plaintiff must "'nudge[]' his claims . . . 'across the line from conceivable to plausible.'" *Iqbal*, 556 U.S. at 885.

Additionally, in determining the merits of a motion to dismiss a counterclaim under Rule 12(b)(6), the court assumes that the factual allegations set forth in the counterclaim are true. *Iqbal*, 556 U.S. at 678.

If a party asserts fraud or mistake, the claim must be pled with particularity. Federal Rule of Civil Procedure 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." "'[I]nequitable conduct, while a broader concept than fraud, must be pled with particularity' under Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009) (quoting *Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). To put it simply, "Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.

Additionally, Rule 9(b) provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The conditions of mind relevant to an inequitable conduct claim include: "(1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1327. Thus, to

8

plead inequitable conduct with particularity, a counterclaim must "recite[] facts from which the court may reasonably infer that a specific individual both knew of invalidating information that was withheld from the PTO and withheld that information with a specific intent to deceive the PTO." *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011). "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Exergen*, 575 F.3d at 1329 n.5.

The plaintiffs argue that instead of the law discussed above, the court should use the standard discussed in *Therasense, Inc. v. Becton*, 649 F.3d 1276, 1290 (Fed. Cir. 2011). *Therasense* states that to prevail on a claim of inequitable conduct, "the accused infringer must prove by clear and convincing evidence that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it." *Id*. However, *Therasense* does not apply to the pleading stage, so the court will instead use the standard set forth above. *See Delano Farms*, 655 F.3d at 1350 (a post-*Therasense* case endorsing the *Exergen* standard when determining whether a pleading states a claim of inequitable conduct). *See also Bayer Cropscience AG v. Dow Agrosciences LLC*, No. 10-1045 (RMB/JS), 2012 WL 1253047, at *4 (D. Del. Apr. 12, 2012) ("[I]n a post-*Therasense* decision, *Delano Farms Co.*, . . . the Federal Circuit appeared to endorse the *Exergen* standard when discussing whether a charge of inequitable conduct based on a failure to disclose will survive a motion to dismiss."); *Sloan Valve Co. v. Zurn Indus.*, No. 10-cv-204, 2012 WL 1108129, at *4 (N.D. Ill. Apr. 1, 2012) ("*Therasense* did not address inequitable conduct claims at the pleading stage, nor did it override *Exergen*'s pleading requirements."); *W.L. Gore & Assocs., Inc. v. Medtronic, Inc.*, No. 10cv441, 2012 WL 368272, at *3 (E.D. Va. Feb. 3, 2012) ("Although the facts alleged in [the defendant's] counterclaim may not be enough to satisfy the *Therasense* elements by clear and convincing evidence, the alleged facts are sufficient to

satisfy *Exergen*'s pleading requirements.").

### III. DISCUSSION

The plaintiffs seek to strike the defendants' eighth affirmative defense as well as dismiss the defendants' inequitable conduct counterclaim. The affirmative defense and counterclaim allege the same facts and must both meet the standards of Rule 12(b)(6). The court will therefore address both the affirmative defense and the counterclaim in the analysis below.

### A. The Circumstances Constituting Fraud

To adequately allege the "circumstances constituting fraud" a party must detail the who, what, when, where, and how of the alleged material omission committed before the PTO. *Exergen*, 575 F.3d at 1327. The "who" requirement refers to the individuals responsible for material omissions from the PTO. *Id*. at 1329. To meet this requirement, the pleading should "name the specific individual associated with the filing or prosecution of the application issuing as the [patent-in-suit], who both knew of the material information and deliberately withheld or misrepresented it." *Id*.

Here, the defendants pinpoint Carlo M. Cotrone, Elizabeth A. Egasti, and Dyann Kostello as persons who knew of the material information and chose not to disclose the information to the PTO. The defendants have therefore satisfied the "who" requirement.

Second, the pleading must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found–i.e., the "what" and "where of the material omissions." *Id*. at 1329. The defendants state that "each of the prior art references listed in paragraph 26 of the counterclaim, anticipates or renders obvious the claims of the '173 and '510 patents," but do not state exactly which claims the references apply to. (Counterclaim ¶ 27, ECF No. 69.) This lack of specificity is true of the allegations relating to the

Invalidity Contentions, the September 15, 2010 Office Action, and the '529 patent as well. Although the defendants may have intended to allege that all of the independent and dependent claims in the '173 and '510 patents are rendered invalid, they do not specifically say so and the court will not take it upon itself to insert assumptions into the pleadings.

Additionally, although the '173 and '510 patents are substantially similar to the '290 patent, they are not identical. Whether or not the additional limitations are important will not be explored by the court for the purposes of this motion.[3] However, such differences may render the descriptions included in Appendix A to the defendants' Invalidity Contentions inapplicable to the '173 and '510 patents. (Invalidity Contentions, Appendix A, ECF No. 75-2.) Thus, merely relying on the reasons articulated in the Invalidity Contentions as to anticipation and/or obviousness of claims 1, 6, and 8-10 of the '290 patent does not sufficiently explain where in each item of prior art the elements of the claims of the '173 and '510 patents are found. Thus, the defendants pleading is insufficient with regard to the "what" and "where" requirements of the *Exergen* test.

Despite the defendants' failure to plead the "what" and "where" requirements with specificity, they do adequately plead the "when" requirement. The defendants state that the information should have been disclosed during the pendency of the '173 and '510 patents' consideration by the PTO, which began on December 9, 2008 (the filing of the '088 Application leading to the issuance of the '173 patent)

---

[3] Of course, the PTO did issue the '173 patent after evaluating its distinctiveness with the '290 patent and issued the '510 patent after evaluating its distinctiveness with the '173 patent. In an Office Action dated December 27, 2010, the PTO rejected then-pending claims 1-11, 12 and 14 of the application leading to the '173 patent "on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1-11 of U.S. Patent No. 7,554,290." (Office Action dated Dec. 27, 2010, ECF No. 75-8.) Then, in an Office Action dated March 3, 2011, the PTO rejected pending claims 1-19 of the application leading to the '510 patent "on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 1-11, 13 and 14 of U.S. Patent Application No. 12/331,088 [the '173 patent]." (Office Action dated Mar. 3, 2011, ECF No. 75-9.) The same Examiner issuing the Office Actions also issued the '173 and '510 patents. Thus, it is likely that the '173 and '510 patents present distinct limitations not presented in the '290 patent.

11

through August 16, 2011 (the issuing of the '510 patent). The defendants also pinpoint specific dates when information became available to the plaintiffs. For example, the defendants served their Invalidity Contentions on the plaintiffs on November 19, 2010, and the PTO Office Action was rendered on September 15, 2010. Thus, the defendants meet the "when" requirement.

Finally, to adequately plead the materiality requirement (also known as the "how" and "why" requirements) of the *Exergen* test, the allegations must "explain both 'why' the withheld information is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Exergen*, 575 F.3d at 1329–30. Because the defendants do not cite the specific claims in the '173 and '510 patent that would be deemed unpatentable in light of undisclosed information, the court is unable to determine whether the undisclosed information is material and non-cumulative. *See id*. at 1329 ("[T]he pleading states generally that the withheld references are 'material' and 'not cumulative' to the information already of record,' . . . but does not identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record."). The defendants therefore fail to meet the "how" and "why" requirements of the *Exergen* test.

**B. Knowledge and Intent**

In addition to pleading the specific who, what, when, where, and how of the material omission committed before the PTO, the defendants must also provide "sufficient allegations of underlying facts from which a court may reasonably infer" that (1) "a specific individual" (2) "knew of the withheld material information," and (3) "withheld . . . this information with a specific intent to deceive the PTO." *Id*. at 1328–29. "A reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id*. at 1329 n.5.

Turning to the first requirement that the defendants allege misconduct by a specific individual,

the court notes that the defendants begin each "intent" allegation stating that "one or more individuals" associated with filing the applications for the '173 and '510 patents were aware of material information and withheld the information from the PTO. (Counterclaim ¶¶ 25, 29, 35, 44, 48, ECF No. 69.) However, the defendants also cite specific individuals, including Carlo M. Cotrone, Elizabeth A. Egasti, and Dyann Kostello, as the persons with the knowledge of material information and the intent to deceive the PTO. Thus, the defendants adequately plead that a "specific individual" acted with the alleged knowledge and the requisite intent.

The second and third requirements are unattainable because the court has found that the defendants failed to adequately plead materiality. Thus, the defendants do not allege sufficient facts to give rise to a reasonable inference that the individuals knew of the withheld material information and withheld the material information with intent to deceive the PTO. The court will therefore grant the plaintiffs' motion to strike the defendants' inequitable conduct affirmative defense and dismiss the defendants' inequitable conduct counterclaim.

## V. CONCLUSION

The defendants failed to meet the "what", "where", "how", and "why" requirements under the *Exergen* test. The court will therefore grant the plaintiffs' motion to strike the defendants' inequitable conduct affirmative defense and dismiss the defendants' inequitable conduct counterclaim. Additionally, because the request for leave to amend the counterclaim and affirmative defense was not made in bad faith and will not necessarily be futile or result in undue delay or prejudice, I will dismiss the counterclaim and strike the affirmative defense <u>without prejudice</u> and allow the defendants to amend the answer and counterclaims. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for leave to file a sur-reply in further opposition to the plaintiffs' motion be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiffs' motion to strike the defendants' inequitable conduct affirmative defense and dismiss the defendants' inequitable conduct counterclaim be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the defendants' eighth affirmative defense, inequitable conduct, be and hereby is **STRICKEN WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the defendants' inequitable conduct counterclaim, Count III, be and hereby is **DISMISSED WITHOUT PREJUDICE**;

**IT IS FURTHER ORDERED** that the defendants' request for leave to amend their allegations be and hereby is **GRANTED**.

**SO ORDERED** this 29th day of May 2012, at Milwaukee, Wisconsin.

                                        **BY THE COURT:**

                                        s/ William E. Callahan, Jr.
                                        WILLIAM E. CALLAHAN, JR.
                                        United States Magistrate Judge